210-1137 Emory Estate of Robert F. Brantman Sr. People of the State of Illinois and the Indianapolis This is Robert F. Brantman Jr. This is Pondell Kellogg. Argument on behalf of Mr. Kellogg, Mr. James Pryor. Argument on behalf of the people, Ms. Jane Knowles. All right. Let's help him make his seat. May it please the Court, my name is James Pryor. I represent the respondents below, appellates here, members of the Brantman family who are seeking reversal of orders, granting summary judgment to the petitioner and denying motion for summary judgment by my clients, the respondents. My clients are admittedly innocent family members who, in a period from six to nine years ago, received preliminary or partial distributions from a Brantman trust, Brantman family trust. Those distributions were specified in the trust and they were made by the original trustee. But the original trustee later converted significant assets of the trust and rendered the trust insolvent so that it could not complete all of their main distributions. It could not fulfill all of the distributions that were designated in the trust document. One of the disappointed beneficiaries was the moving below, the petitioner below the McDermott Foundation. That trustee was replaced, he was prosecuted, but the bottom line is there is not sufficient money now in the trust to make all of the distributions that were specified. Is your primary attack on standing a relative to the constructive trust? We have an argument on standing, Your Honor. I would not say that's our primary attack. What is your primary attack? I believe our primary attack is, first, that there is no race for constructive trust to be attached to. It's axiomatic under Illinois law that you have to have a presently identifiable race. There was no effort in this case to identify any race. The McDermott Foundation said these distributions were made, various distributions, six to nine years ago, that's all we have. There was no attempt to trace those proceeds through the recipients to where they exist now, to where they existed at any time during the course of this current proceeding. Are you saying they have to be actually traced to, for example, a specific bank account? It isn't sufficient to say these monies were distributed from the trust to beneficiary X? That's correct, Your Honor. The case law is pretty clear on that. There is actually case law that says where money is, since Illinois law, where money is the subject matter for a constructive trust, you need to trace the money into the hands of the defendant and through whatever iterations or accounts it may be in to a presently existing fund. And there is even case law that says if it's gone into a fund or an account where it's been commingled with other monies, that a constructive trust would be inappropriate. That's particularly true in a situation here where you have not wrongdoers. You're not attaching a constructive trust to money in the hands of wrongdoers. You're attaching a constructive trust or attempting to money in the hands of innocent people. Well, how would McDermott have been able to do this at this stage of the proceedings? Well, McDermott took some discovery and they had an opportunity to depose whoever they wanted to. They deposed a number of people, and in those depositions they made no effort to determine where the money was or that it still existed. There was nothing attached to the motions for summary judgment, no affidavits or no deposition testimony that reflected where the race was. Exactly. That is correct, Your Honor. So now it's too late. In other words, what would be inappropriate about remanding for determination of where the race is? That is certainly a possibility that this court could entertain if this court were to reverse the finding of summary judgment. I think if that were the only issue, that certainly could be a possibility. I think there are other issues that suggest that a complete reversal and granting of summary judgment to my clients is appropriate. But by itself on that issue, that's not – before a constructive trust could be entertained, I think that would have to happen. I think it would be a waste of judicial assets, a waste of the time of the litigants, and a waste of the lawyers' efforts and the money that would be spent only because so much time has gone by. I think that the McDermott Foundation probably didn't do that because they're probably aware that after nine years, a lot of these people aren't going to have this money anymore and they're not going to be able to trace it. In addition to the lack of a race, which I think is just an absolutely critical issue here, there also was admittedly no balancing of the equities. The trial court did not balance the equities. These are equitable claims, unjust enrichment, constructive trust. They're creatures of equity. A constructive trust should only be imposed, the Illinois Supreme Court has said, should only be imposed where there has been a violation of fundamental equitable principles. For the trial court to determine that there had been a violation of fundamental equitable principles, it needs to look at the equities, it needs to balance the hardship. It did not do that in this case. The parties essentially agreed that it did not do that. To the extent there is a record for this court to look at, we think the record is clear as to where that balance should fall. Didn't the trust argue that there would be hardships with respect to the family recipients of the trust? Yes, we... And that point was brought up before the court? We made that argument, Your Honor. The response was that those issues were irrelevant. The response was that the trial court did not need to balance the equities. That was McDermott's argument then, and I think it's, if I understand it correctly, I think it's McDermott's argument still. But the parties have basically agreed that the trial court did not balance the equities. And I think that that had to happen before a constructive trust or any real equitable relief could have been granted. And the record, again, I don't need to read out the briefs, Your Honor should have read them, but what there is on the record shows... I agree that the court was aware of the basic problem relative to the race and the fact that the family has the money that a lot of times passed the court and noted that a good amount of time had passed and was aware of all those factors when it made a ruling in setting up the constructive trust or permitting the constructive trust. Those arguments were made to the trial court, Your Honor, yes. That's true. Turning for a minute to the issue of standing, certainly we're aware it's black letter law that the trustee normally would be the one to bring a suit, but there are a couple exceptions. Why would McDermott not have standing when Robert was discharged from his responsibilities and there was no trustee? Well, standing has to exist at the time the action is brought. And this action was brought while Robert was still in place. And, in fact, when Robert moved to be... Robert's here today with us. When Robert moved to be discharged, McDermott went in and objected to that discharge on all of the basis that it's asserted here. And it specifically argued on that discharge motion that Robert was in breach of his duty. And that is one of the elements of the exception that Your Honor is citing. If he was in breach of his duty, well, there's two exceptions. There's one that if he was in breach of his duty and the other is if there is no trustee. And I apologize, Your Honor, I actually think I was referring to the second one. But in either case, Robert was there when this action was brought, and that's the time at which standing has to be measured. So there wasn't standing at that time the action was brought. And secondly, the other exception, which might otherwise apply, does not apply because there was an express finding by the trial court on Robert's motion for discharge that he was not in breach of his duty. And that finding was entered over the specific objections of McDermott on the specific grounds that they're using to argue before this Court that there was a breach of duty. So at that point, you've got a determination by the trial court and a discharge by the trial court. An appealable order was not appealed, and therefore our position in our brief is that they have no ability to argue that point now, and therefore they don't fit that exception either. But nevertheless, the trial court left the trust open, didn't allow it to be closed. I mean, they discharged Robert, but wasn't it with the trial court's understanding that McDermott would be pursuing derivatively, perhaps, the claims against the other beneficiaries? And so wasn't this done with the trial court's approval? If it was done with the trial court's approval, our position would be that it was done, as we say in our brief and as we thought at the time, that it would be done properly as a direct action, not as a derivative action. When they say we admitted that they have standing to sue directly, what we said in the trial court was if you proceed properly and if you sue on your own behalf and stake a claim on your own behalf, perhaps you have standing. But they are attempting to sue derivatively, and to sue derivatively, and the fact that they're attempting to sue derivatively is demonstrated by the fact that they're asking for a leak to come into the trust and by the fact that they're asking for the fees to be paid from the trust. Neither of those things can or should happen unless, in fact, they're suing derivatively. I don't know, Your Honor, if the trial court specifically thought that they were going to sue derivatively or if the trial court thought that they were going to bring a direct action, but our position is they don't have standing to bring the derivative action that they have, in fact, asserted. At the time the final order entered the Senate, Robert was an impotent continuing trustee of the trust with little if any powers. Do you agree with that, that Robert was never discharged from the standpoint of the constructive trust aspect of the continuation of the lawsuit? Your Honor, I think the record is a little convoluted there, and I think there's room for it to be read a couple different ways, but I think the fact of the matter is, and this is important to keep in mind, is that Robert was never discharged from the standpoint of the constructive trust aspect of the lawsuit. To keep in mind, the specific issue wasn't Robert, go sit on the side. That wasn't what the trial court said. The trial court said they object that you didn't do your duty, that you didn't bring these actions. The trial court disagrees with that. The trial court overrules expressly those objections and says you did everything you needed to do. You are not in breach. Now, where the trial court left it, I agree, Your Honor, is a bit confusing even to me, and that's why I say I think there are other arguments that I focus on more than standing. Because I think the standing issue is a convoluted issue. But I do think that there are very strong arguments why there wasn't standing. Yeah. Why don't you go on to your other points? So in addition to our position that the summary judgment in favor of the McDermott Foundation should be dismissed because there was no race and because the balance of equities clearly favors the family members, we also believe that the summary judgment in favor of the McDermott Foundation was inappropriate because there was no actual unjust benefit. For constructive trust to issue, for unjust enrichment to occur, there has to be an unjust benefit, and it has to be unjustly retained. Our argument on that issue is technical, but I think it is valid. The argument is that at the time the distributions were made to each of the individuals involved here, the trust was solvent. There was no inappropriateness of those distributions at the time. McDermott Foundation's response to that is to say, well, even if the trust was solvent, even if there was enough money to make those distributions, we think they were improper because they did not proceed in the exact order mandated and specified by the Probate Act abatement rules and by the Hamilton case decided by this court. And our response to that is very simple. The Probate Act specifically says that you have to apply those rules of abatement, those specific orders. You can't go outside the order as was done here if there are insufficient assets to make all the distributions. And that wasn't the case here at the time, so that rule didn't apply when those distributions were made. And this court in the Hamilton case, which is their only other authority on that point, basically said the same thing. It said once a trust is insolvent, then of course at that point the only fair way to proceed is to apply the proper abatement rules, go in order of classes, and everybody gets paroled. But again, there's no authority that suggests that that rule should apply when you have a flush, solvent trust, and you have a trustee that's dealing with family issues, dealing with people who are on dialysis, dealing with people who have special needs, and trying to do fairness and make some preliminary early distributions that may not be what would exactly be programed under the abatement rules if it was insolvent. And our position is that because it didn't become insolvent until several years later when the trustee absconded with much of the balance of the assets of the trust, then it wasn't an unjust enrichment at the time that it was distributed and therefore will not support an action for constructive trust. The point when the trust became insolvent and the point when people knew the trust was insolvent could have been different dates. That is certainly possible, Your Honor, and there was some discovery on that issue. And I think in essence, while the facts are not contested, the record does show that at some point in time, of course, the family members became aware, but virtually all the distributions, I think I can fairly say all of the distributions were made before any of the family members who received the distribution were aware of anything, for what that's worth. Those are the principal reasons that we feel that the McDermott Foundation's motion for summary judgment should be reversed. We also feel that basically those same reasons support not only a reversal of that order, but a reversal of the order denying summary judgment to the family members. As we have argued and we believe we've demonstrated, the McDermott Foundation lacks standing. More importantly, I think the balance of the equities, what is in the record clearly shows that the balance of the equities would do an extreme hardship to these family members to try to force them to come up with money. There's no evidence that any of these family members still have any money. There's no evidence that any of this money was spent on anything other than legitimate medical or other family needs. There's no evidence that any of these family members were independently wealthy. The balancing of the equities was part of the burden of proof that the plaintiff had. The plaintiff did not meet that burden, did not induce evidence, did not balance the equities, and therefore, not only are they not entitled to summary judgment, but we believe based on the record that's before the trial court and is before this court, summary judgment should have been granted to the family members. How do you interpret the, I don't know, I was just looking for a page of the site of the case. I believe it's D-U-N-J-E-Y-D-U-N-G. That's an Illinois Supreme Court case that discusses standing and beliefs. I apologize, Your Honor, could you refresh me as to what now? We have five cases today. I apologize to you, Your Honor, I don't have that one. This case, it does discuss standing. Let's pass that. I have one quick question. I know the bell went off, but the timer went off. There were distributions made to the 21 grandchildren, were there not? And those distributions were pursuant to the terms of the trust to be held, or they weren't to be distributed to each grandchild until that grandchild became age 30. Correct? Correct. So how do we know, I mean, is there any evidence in the record to show if any of the grandchildren have reached age 30 and actually have that, or whether those monies are still in the trust for those 21 grandchildren? My understanding is that there were not distributions made to people who were not entitled to distributions yet. There may have been money set aside into sub-trusts for the benefit. And those people may not have been entitled to take that money personally until a certain time. But I don't think there's any, and counsel will, I'm sure, correct me if I'm wrong, I don't believe there's any argument on that score that people got money that shouldn't have gotten money. I think the argument is only that those, to the extent that those were residuary beneficiaries, under their argument that you had to proceed under the abatement rules program, those distributions should not have been made until everything else was gone and then they would get the residuary. What happened instead was the trustee made estimates based on the flush, solid trust. This is what clearly will be left if I don't steal all the money. And therefore, it's okay to do that now because it's what they're going to get anyway. And then it doesn't happen because he subsequently takes the money. Thank you. Just for the record, it's D-U-N-G-E-Y. It's involved in another case that I have, the last case we have. Thank you very much for those reasons. We believe that these judgments should be reversed. Thank you. Your honors. Good morning. May it please the court. My name is Jane notes. I'm with the Illinois Attorney General's Office, representing the people of the state of Illinois. And with me at council table is Robin Maher. Ms. Maher represents the McDermott Foundation, and they have adopted the people's positions in this court. Now, I understood counsel to make four primary points that I'd like to address this morning, time allowing. That is standing, the balancing of the equities or hardships. Their argument regarding tracing with regard to the constructive trust. And then also their argument that summary judgment should be granted in their favor. Now, on the standing issue, they did not challenge on standing grounds count two of the charities amended petition in the trial court. That's the constructive trust count on which the charities achieve, obtain judgment. And so, therefore, they have waived their standing arguments. Standing is an affirmative defense. It needs to be timely presented to the trial court, and they didn't do so. If the court wants to reach the merits of the standing argument and forgive the waiver, the court should find standing on either one of two independent grounds. The first ground is that a trust beneficiary always has standing to sue another beneficiary to recover an overpayment of trust assets. That principle is set forth in the Scott and Asher Treatise on Trust, which is sort of the preeminent treatise, as well as the second restatement of trust. But now are these overpayments? Well, yes. Yes, Your Honor. These are overpayments because they were improperly made. Now, what I understand the charity, I mean, I'm sorry, the family member's argument to be on this point is because there were apparently were sufficient assets at the time they were made. They were not overpayments. That's simply a misstatement of the law. Now, it's true that a trustee can make early distributions, but the trustee has to do so in an even-handed manner. The trustee has to treat all similarly situated beneficiaries equally. And if the trustee is not required to do that, the rule that the trustee has to be impartial will simply be meaningless, and the sort of favoritism towards insiders that, to be honest, occurred in this case will be incentivized. So these payments definitely were overpayments under the terms of the trust. The charities were specific pecuniary beneficiaries. They were entitled to take before the residuary beneficiaries, before Mr. Brantman's children who weren't named as specific pecuniary beneficiaries, and they were entitled to take on a pro rata basis with the other specific pecuniary beneficiaries when the trust assets proved insufficient to fund all of those requests. At what point did that occur? You know, I think it's a little bit unclear from the record. There is some record evidence that it may have occurred at least, and I guess I can't say for sure. There is some evidence that a few of the people who received distributions may have known that the original trustee had stolen money at that time, and there wouldn't be enough to pay everybody. That said, it is true for the purposes of this appeal we are accepting the proposition that the people who received the distributions did so not knowing that the charities, you know, would not be paid. What the record does show is there was a letter to the charities. I believe it was dated 2005 that indicated that there had been some sort of fraud. It's attached to the charity's summary judgment motion, and then the charities became aware in 2007 when the final account was filed that there wasn't going to be enough money to pay everyone. So it was sometime, I think, between 2005 and 2007. So I'm sorry. Back to the standing point. We believe they're standing under the restatement provision, section 254. All the family members say in response is that the Illinois Supreme Court has never adopted that provision. It's only because the court hasn't been presented with the question. The Illinois Supreme Court has routinely, when presented with the question, adopted provisions of the first and second restatement. There's no reason to think they wouldn't adopt this one. While we agree that the provision isn't binding on this court, it nevertheless should be very persuasive authority for the court. In the alternative, they're standing on the alternate ground that even the family members seem to recognize, which is that there was no trustee to bring this recovery action. At the time the charities filed their amended petition where they brought the constructive trust account for the first time, Robert Brantman had been discharged as trustee. There was no sitting trustee. So standing fits even under the family member's own rule. Now, the fact that Robert Brantman was discharged based on finding that he'd acted in good faith as trustee does not weigh against standing. Because I think, as your questions were getting at, the circuit court made the decision to discharge Robert contingent upon the charities being able to bring this lawsuit. And that's reflected in the court's decision to escrow Robert's fees pending resolution to the citation to recover assets. And also reflected in the special administrator's report, which the circuit court followed those recommendations. And there the special administrator didn't find no unjust enrichment. He believed the charities should be allowed to bring these actions. So I think the standing argument should be pretty regularly disposed of. And certainly, if there's any ambiguity in the circuit court's record as to the court's intention, it should favor the charities. Because the court let these proceedings go to judgment in favor of the charities. Obviously, the court thought the charities would be able to bring this lawsuit when it discharged Robert. So I'll move on to the argument, which is that the circuit court was required to somehow engage in a weighing of the hardships before it entered judgment on the unjust enrichment count. There's simply no Illinois case law for this proposition that we are aware of. Under Illinois law, to sustain an unjust enrichment claim, all the charities had to do was show that the family members received a benefit that properly belonged to the charities. And that the family members then retained that benefit. That's the holding of the Illinois Supreme Court's decision in the HBI health care services case. And also this court's more recent decision in the Bensonville v. City of Chicago case. Both those cases recognize, or the rule of those cases, is that a plaintiff does not need to show that a defendant was complicit in wrongdoing or is somehow less sympathetic to a plaintiff in order to recover on an unjust enrichment claim. Now, to be sure, hardship to a defendant can be relevant. But it's relevant in the context of an affirmative defense. And a defendant can come to the court and explain to the court that he has so changed his position in reliance upon a benefit unlawfully received and that change is material and irrevocable. And that can be an affirmative defense to an unjust enrichment claim. But the family members never even tried to make out this defense. And it's no doubt because they can't. All they've ever said they've done with this money is spend it on living expenses. And spending your money on living expenses simply isn't the kind of detrimental reliance that you need to show to defeat an unjust enrichment claim. Isn't there also a rule that favors family members over others? That is simply a rule of construction. And it applies when a testamentary document is ambiguous as to priority of takers. It's not sort of a general sort of policy principle. So it would apply only in the circumstance that Mr. Brantman's trust document was somehow unclear about his intent as to who should get what and in what order. There's never been a claim here that the trust document is unclear in that way. And so the policy that they seek to rely on simply doesn't apply. It's an inapplicable rule of construction in these circumstances. There is, of course, if the court wants to get into a balancing of the hardships, and our position is the court doesn't need to. The circuit court wasn't required to. But if the court wants to, there is a policy favoring charitable gifts, excuse me, favoring maximizing gifts to charity. And that policy would clearly be applicable here. Now, what the family members say about this is that policy somehow applies only to private charities and not to public charities. I could not find any case law making this distinction in this context. And to the extent it even seems relevant, these charities would qualify as public charities because they give services to people who would otherwise rely on the public fisc for their health and well-being. These charities serve developmentally disabled adults. They serve people who are homeless. They serve people who have drug and other substance abuse problems. So clearly, they qualify for the policy that favors charitable gifts. And then again, I'd like to make just two small points that the family members have sort of suggested that the charities come to this court with unclean hands because they didn't seek recovery from either the archdiocese of the home that was gifted to them and because they did not seek to enforce the default judgment that was entered against Charles Brantman, the original trustee. Both of those arguments are incorrect. The charities had no ability to seek recovery of the value of the house just as they had no ability to seek recovery of the value of the items of tangible personal property that went to the family members because those were specific gifts given without regard to their value and therefore they took priority over the pecuniary gifts that the charities received. So the charities should not be faulted for not having taken action against the archdiocese. The charities also should not be faulted for not having sought to enforce the default judgment because when Robert Brantman was trustee, he persuaded the circuit court that judgment was uncollectible. So it's fairly hypocritical for the family members to now say that the charities should do something that they told the circuit court was futile. But isn't there one of the beneficiaries against whom they've chosen not to proceed? Yeah, the charities, they've chosen not to proceed against a portion of the money that went to Peter Brantman. $60,000 went to Peter Brantman in small amounts, about $2,000 apiece, and the family member's position has been that that paid for his dialysis and the charities decided not to go after that money. They are pursuing him to the extent that he received the $40,000 that all of the children received and doesn't seem to be attributed to a special medical need. But that was in the charities' discretion to make these determinations, you know, who they wanted to pursue. Do you agree that for the purpose of establishing a constructive trust, arrest is necessary? Yes. Because that would destroy your whole case, right, if we can't establish the arrest? Well, yes. If it's okay, I will address the second part of your question first. It does not destroy our whole case if the circuit court granted the wrong remedy. This court could grant restitution in the first instance or it could remand to the circuit court where the charities could seek restitution there. Now, all the family members say is that this court shouldn't grant restitution because the circuit court has to, again, weigh the hardships, first of all. But that's incorrect. The family members have an affirmative defense available to them. If they can show... What tool, other than a constructive tool, what would we use or the child court use to reach that money that went to the children? Well, the remedy of restitution is perfectly available. A remedy like a constructive trust is an equitable remedy for unjust enrichment. But we do think that constructive trust was the correct remedy. And I think on this point the court should just look at the Illinois Supreme Court's decision in People v. Warren Motors. Because in that case, the court held that the people could recoup the value of fraudulently obtained tax deductions that the defendants had obtained. And the people could use a constructive trust to do this, even though the people were unable to trace the defendants' gains into specific property. The court simply didn't require the type of tracing the family members think is necessary. Now, the family members' response is that that case, Warren Motors, is somehow limited to circumstances only where the defendant is complicit in the wrongdoing. But the court's decision in no way turned on that particular fact. And the court subsequently, in the Smithburg case, reaffirmed that a constructive trust can attach even under circumstances where the defendant is innocent of wrongdoing. So the family members are incorrect in trying to distinguish themselves from the Warren Motors case. And then finally, I'd like to simply address the family members' request that judgment be entered in their favor. This, as I understand it, and I touched on it earlier in the overpayment context, is based on the idea that these distributions were not improper because there were sufficient assets, supposedly, at the time they were made. If the court were to adopt the family members' view of the law, trustees would no longer be required to be impartial. And that is simply not the law. We are in no way saying that early distributions are never permissible, but they have to be made on an even-handed basis. And they were not made on an even-handed basis in this case. And then I guess just a small point I would make. There was some, I'll just finish this up, some discussion at the end of counsel's argument about whether the distributions to the grandchildren went into a trust for them, as I understand the questioning. It appears from the final account that Robert Brantman, the successor trustee, prepared that those distributions went directly to the grandchildren. That was the impression we had. And that's, to the extent the record addresses that issue, that's what we know about it. So if there are no further questions, we would respectfully request that this court approve. Any questions? Thank you. All right. Thank you. Rebuttal. Thank you, Your Honors. Counsel said that the family members waived standing that they could assert standing below. And I'm just proceeding, not necessarily in a court of reports, but in the order that she raised these issues. The family members moved to dismiss the original claim, the first count, on standing. And over our objections, the McDormand Foundation was allowed to proceed in an order on that original motion with their count two. In their brief, the McDormand Foundation suggests that we waived the argument by not moving the court to reconsider, the trial court. And there simply is no requirement that we make a motion to reconsider in order to preserve that argument for appeal. That's our position on that. Counsel said beneficiary always has standing to sue another beneficiary for overpayment. And there is case law to that effect, and that case law says you can bring a direct action under the correct circumstances if you meet the correct requirements. That's not what was done here. They brought a derivative action for the benefit of the trust, seeking constructive trust repayment into the trust, and asking for their fees to be paid from the trust, all which can only happen in a derivative action. So if that was an argument for standing, it's not applicable to this action. Counsel said that the charities chose not to pursue some of the distributions, and I must just confess to being a bit confused about that, because I think the summary judgment motion that was granted and that is now on appeal does pursue those, basically all of those distributions. And I think that any change in what they're seeking has been done in the course of subsequent proceedings briefing on this. Unless I'm wrong, I think the record is a little unclear on that, but I do have a problem with that, which is why we raised the arguments that we raised on the balancing of the equities. Counsel suggests that the court could grant restitution without proper discovery on the issues that go into restitution. I think it's patently unfair to allow them to completely switch their ultimate legal theory on recovery this late in the game. And I think that if that were going to be the case, it should be remanded with instructions to allow discovery to see if that indeed is an appropriate remedy. And finally on the balancing of the equities, again, it's so fundamental that an equitable court can only do equity that an equitable court has to consider the equities. I don't know that I need a specific case that says in this particular case the court has to balance the equities. It's part of the fabric of what we're talking about. So our position on that is that by admittedly the parties agree the court did not balance the equities in any way, that that needs to happen. If there are no questions, thank you very much, Your Honors. Thank you. All right. Thank you. The case is taken under advice from Mark Stanton.